**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **TOP TOBACCO, L.P. and REPUBLIC TOBACCO, L.P.,** | ) ) ) | Case No. |
| Plaintiffs, | ) ) | Hon. |
| vs. | ) ) | |
| **S&N ENTERPRISES, INC. OF VIRGINIA, D/B/A "S&N ENTERPRISES, INC." AND HARSH PARESH PATEL,** | ) ) ) | JURY TRIAL DEMANDED |
| Defendants. | ) ) ) | |

## COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiffs Top Tobacco, L.P. ("Top") and Republic Tobacco, L.P. ("Republic") (hereinafter Top and Republic are together referred to as "Plaintiffs"), by and through their undersigned counsel, for their Complaint against S&N Enterprises, Inc. of Virginia, d/b/a "S&N Enterprises, Inc." and Harsh Paresh Patel (collectively, the "Defendants"), hereby allege as follows:

## NATURE OF THE CASE

1.      This is an action involving infringement of registered trademarks and unfair competition under the Lanham Act of 1946, as amended, 15 U.S.C. § 1051 *et seq.* and violations of state common law provisions.  Top owns numerous federal trademark registrations for use in connection with cigarette rolling papers as well as registrations for use in connection with, among other things, tobacco and smokers' articles, including all common law rights in such marks (together, the "TOP Marks," described with particularity in paragraph 19).

1

2.       Plaintiffs bring this action in response to Defendants' infringing and unlawful conduct and in order to protect one of Top's most valuable assets; namely, the goodwill and consumer recognition of its well-known TOP Marks, which Top and its predecessors have used continuously for over 100 years in connection with smoking tobacco and for over 60 years continuously with cigarette rolling papers.  Republic and its predecessors have been the master U.S. distributors of Top's TOP-brand products since before the acts of Defendants alleged herein.  Republic is the sole distributor authorized to purchase TOP-brand items from the factories where they are produced.  Republic markets such items in the United States through wholesalers, retailers, convenience stores, gas station mini-marts, tobacco outlets, mass merchandizers, cash and carry outlets, and other retail locations.

3.       Defendants ordered, purchased and/or imported counterfeit TOP-branded and labeled products, which are inferior in quality and design to Top's legitimate, trademarked products, from one or more sources in Asia in order to sell those counterfeit products at S&N.  In so doing, Defendants deliberately evaded legitimate sources of the TOP-brand products in question, and instead knowingly, willfully and intentionally chose to obtain illegal and counterfeit copies of Plaintiffs' products for the purpose of importing, illegally distributing and reselling such TOP-brand products in violation of Plaintiffs' rights and in violation of the federal trademark laws, the Illinois state statutes and Illinois state common laws.

4.       Defendants have significantly harmed Plaintiffs' rights and confused the consuming public, and will continue to do so unless and until the relief requested herein is granted.

## PARTIES

5.      Top is a Delaware limited partnership, and maintains its principal place of business at 2301 Ravine Way, Glenview, Illinois 60025.

6.      Republic is a Delaware limited partnership, and maintains its principal place of business at 2301 Ravine Way, Glenview, Illinois 60025.  Republic is a wholesaler, distributor and retailer of tobacco products, components and accessories, and is the master distributor of TOP-brand products in the United States.

7.      Defendant S&N Enterprises, Inc. of Virginia, d/b/a "S&N Enterprises, Inc." ("S&N") is a Virginia corporation located at 4115 Hopkins Road, Richmond, Virginia 23234. S&N operates as a wholesale retail distributor of novelty products, including cigarette rolling papers and accessories.

8.      Harsh Paresh Patel ("Patel") is an individual and the registered agent of S&N.  On information and belief, Patel is the owner of S&N and operates S&N on a day-to-day basis.  He resides at 11401 Willow Gate Drive, Glen Allen, Virginia 23060.

## JURISDICTION AND VENUE

9.      This Court has personal jurisdiction over Defendants because they have engaged in business activities in, and directed to, the State of Illinois and within this judicial district, because Defendants have knowingly committed tortious acts aimed at and causing harm within the state of Illinois and this judicial district, because Defendants made or performed contracts or promises substantially connected with this State; and because Plaintiffs suffered harm within this judicial district as a result of Defendants' conduct complained of herein.

10.     Plaintiffs' claims are, in part, based on violations of the Lanham Act of 1946, as amended, 15 U.S.C. § 1051 *et seq*.  This Court has jurisdiction over the subject matter of

Counts 1–4 pursuant to 15 U.S.C. §§ 1121(a) and 1124–1125, and 28 U.S.C. §§ 1331 and 1338. This Court has jurisdiction over Counts 5–9 pursuant to 28 U.S.C. §§ 1338(b) and 1367(a) because those claims are so related to the federal claims arising under the Lanham Act that they form part of the same case or controversy and derive from a common nucleus of operative facts.

11.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because, among other things, upon information and belief, (1) Plaintiffs and Defendants transact business in this judicial district, (2) Defendants are subject to personal jurisdiction in this judicial district, (3) a substantial part of the events giving rise to Plaintiffs' claims occurred in this judicial district, (4) the intellectual property alleged to be damaged by Defendants' acts is owned by Plaintiffs in this judicial district, and (5) Plaintiffs invoice Defendants from this judicial district and receive and process Defendants' payments in this judicial district.  Furthermore, jurisdiction in this district is proper because Defendants intentionally misrepresented statements about maintaining exclusive Republic Tobacco Cigarette Paper distribution to representatives of the Plaintiffs in this judicial district.

## ALLEGATIONS COMMON TO ALL CLAIMS

### Plaintiffs' Business and Top's TOP Marks

12.     For many years, Top and its predecessors and affiliates, including Republic and its predecessors, have been engaged in the distribution and sale of smokers' articles, including tobacco and related products such as cigarette rolling papers.  One market in which Plaintiffs compete is the "roll-your-own" market, in which Plaintiffs distribute tobacco and cigarette papers, sold both together and separately.  Top, the owner of the TOP Marks, through its exclusive master distributor Republic, distributes such goods to consumers across the United States through wholesalers, retailers, convenience stores, gas station mini-marts, tobacco outlets,

mass merchandizers, cash and carry outlets, and other retail locations. As a result, Top has become one of the best-known manufacturers of tobacco and tobacco-related products. By volume of leaves, Top cigarette papers are the largest-selling cigarette papers in the United States.

13. The Top brand of tobacco is one of the oldest tobacco brands in the United States. Top's predecessors first began to use the TOP Marks with tobacco in the United States in the early 1900s. Thus, for over 100 years, Top and its predecessors have used the TOP Marks continuously in connection with tobacco, and over those many decades, TOP has become one of the best-known brands of tobacco in the United States. In fact, TOP is the leading-selling brand of roll-your-own tobacco by volume in the United States. (The TOP Marks are described with particularity in paragraph 19.)

14. Since Top's predecessors' first use of the TOP Marks with tobacco over 100 years ago, the range of smoking-related products with which the TOP Marks have been used has expanded. Beginning in or around the early 1940s, Top's predecessors began using the TOP Marks with cigarette papers. Through Top's and its predecessors' continuous use of the TOP Marks with cigarette papers, TOP also has become one of the best-known brands of cigarette papers in the United States.

15. Republic is the master distributor of Top's TOP-brand products, and sells those products nationwide to wholesalers, retailers, convenience stores, gas station mini marts, tobacco outlets, mass merchandizers, cash and carry outlets, and other retail locations. In the past five years alone, Republic has sold tens of millions of dollars' worth of smoking tobacco and cigarette papers under Top's TOP Marks. Republic's sale of smoking tobacco and cigarette papers under Top's TOP Marks inures to the benefit of Top.

16.     Republic promotes and advertises Top's high-quality TOP-brand products.  For years prior to the conduct of Defendants alleged herein, Republic and its predecessors have devoted significant time, effort and resources to marketing and promoting smoking tobacco and cigarette papers under the TOP Marks.  In fact, Republic and its predecessors have spent millions of dollars promoting the TOP Marks and Top's products sold in connection therewith.

17.     As a result of the many decades of continuous and extensive use of the TOP Marks in interstate commerce in connection with tobacco and cigarette papers, Top's TOP Marks have developed considerable recognition.  Top has worked diligently to establish—and now owns—considerable and valuable goodwill in and symbolized by its TOP Marks.

18.     As a result of Plaintiffs' and their predecessors' use and extensive promotion of the TOP Marks in connection with tobacco and cigarette papers, the TOP Marks have become well known and recognized by the public as identifying and distinguishing Top's products.  This consumer goodwill in and recognition of the TOP Marks constitutes one of Top's most valuable assets.  Accordingly, the integrity of Top's TOP Marks is extremely valuable to Top and is crucial to the continued vitality and growth of its business.

19.     Top maintains federal trademark registrations including, among others, Registration No. 2,739,465 (the "Design Mark") and Registration No. 2,831,105 (the "Word Mark") for use in connection with cigarette rolling papers.  (Together, these registrations are referred to herein as the "Paper Marks.")  Top also maintains federal trademark registrations including, among others, Registration Nos. 2,293,958; 2,739,466; 3,029,855; 3,407,400; 3,677,986; 3,677,987; 3,710,606; 3,720,176; and 3,918,139 for word and design marks used in connection with, among other things, tobacco and smokers' articles.  (Collectively, these registrations are referred to herein as the "Tobacco and Tobacco Products Marks.")  Copies of

the registration records for Registration Nos. 2,739,465; 2,831,105; 2,293,958; 2,739,466; 3,029,855; 3,407,400; 3,677,986; 3,677,987; 3,710,606; 3,720,176; and 3,918,139 are collectively attached hereto as Exhibit 1. Each of Top's foregoing trademark registrations are valid, subsisting, and in full force and effect.

20.     U.S. Registration Nos. 2,739,465; 2,831,105; 2,293,958; 2,739,466; 3,029,855; 3,407,400; 3,677,986; 3,677,987; 3,710,606; 3,720,176; and 3,918,139, each of which is owned by Top, have become incontestable within the meaning of 15 U.S.C. §§ 1065 and 1115(b).

21.     Top has acquired significant common law rights in the TOP Marks for use with its goods.

22.     The TOP Marks at issue in this case have been continuously used and have never been abandoned.

23.     TOP-brand products are manufactured and sourced exclusively for, and under the direction of, Republic, and such products are sold through Republic.

24.     Plaintiffs have become aware that Defendants, well after Top first used and developed strong goodwill in its TOP Marks, have imported, and on information and belief continue to import, what purport to be authentic TOP-brand cigarette rolling papers bearing the TOP Marks but which are, in fact, counterfeit and/or infringe TOP-branded and TOP-labeled products.

### Plaintiffs' and Defendants' Business Relationship

25.     S&N has been a customer of Plaintiffs since 1995.

26.     Plaintiffs are headquartered in Glenview, Illinois.

27.     Patel is the registered agent of S&N.

28. On information and belief, Patel is also the owner and day-to-day operator of S&N and is responsible for purchasing S&N's inventory to sell to its customers.

29. Since 2010, Defendants have purchased over $600,000 worth of authentic TOP-brand products, including TOP-brand cigarette rolling papers, from Plaintiffs to resell to its customers. Accordingly, Defendants are intimately familiar with the genuine appearance of TOP-brand cigarette rolling papers.

30. Defendants authorized Republic to initiate electronic debit entries to its bank account for payment of all merchandise orders, including all purchases of TOP-brand products, by signing an Electronic Funds Transfer (ACH) Authorization.

31. The Defendants remitted payment to Plaintiffs through electronic funds transfer for the purchases of TOP-brand products.

32. In connection with Defendants' purchases from Plaintiffs, Defendants enrolled in a "Value-Added Rebate Incentive Program" ("VRIP") where they received rebates on purchases of certain Republic-brand products, including TOP-brand cigarette rolling papers, if they purchased a certain volume of cigarette rolling papers. (Exhibit 2)

33. As a condition to affirmatively enrolling in the VRIP, S&N agreed to "Maintain exclusive Republic Tobacco Cigarette Paper distribution throughout the program period (12/1/2016 through 11/30/2017)."

34. Patel agreed to the terms of the VRIP, executed the VRIP on behalf of S&N, and sent the VRIP to Plaintiffs' headquarters in Glenview, Illinois.

35. In connection with the purchase of large quantities of TOP-brand cigarette rolling papers, S&N claimed to have earned (and Patel and a guest attended on behalf of S&N) incentive

trips from Plaintiffs over the past several years to destinations including Barcelona, Spain; Cabo San Lucas, Mexico; and Riviera Maya, Mexico.

36.     Defendants have communicated with Plaintiffs' representatives based in Glenview, Illinois to coordinate the trip details for the incentive trips, and have collected on the award of the incentive trip each year it has been offered.

37.     Defendants are also aware of counterfeit Top cigarette rolling papers in the market.

38.     In recent years, Patel has complained to Plaintiffs' sales representatives in the region about the increasing presence of counterfeit TOP-brand cigarette rolling papers in the marketplace.

39.     Patel informed Plaintiffs of the negative effects the sale of counterfeit TOP-brand papers had on his sales of genuine TOP-brand cigarette rolling papers.

40.     Patel informed Plaintiffs that customers of S&N would seek to purchase authentic TOP-brand cigarette rolling papers from S&N, but would complain to Patel that the prices were too high because of the availability of the lower-priced counterfeit cigarette rolling papers in the marketplace.

41.     Given the increasing amount of counterfeiting of TOP-brand cigarette rolling papers and other products, Plaintiffs maintain an anti-counterfeiting program to protect against violations of the TOP Marks.

**U.S. Customs and Border Patrol Intercepts Counterfeit
TOP-Brand Cigarette Rolling Papers**

42.     On June 25, 2017, U.S. Customs and Border Patrol ("CBP") intercepted 4,032 booklets purporting to be TOP-brand cigarette rolling papers at John F. Kennedy International Airport.  (*See* "Customs Seizure Notice" attached hereto as Exhibit 3).

43.     The booklets were shipped from exporter Lioug Keng Rechargeable Battery Inc. from an unknown address in Hong Kong.

44.     The Customs Seizure Notice did not include the name or address of any manufacturer.

45.     Plaintiffs do not manufacture any TOP-brand cigarette rolling papers in Hong Kong.

46.     The intended recipient on the Customs Seizure Notice was Shanil Mitha at the address 10307 West Broad Street, Unit 187, Glen Allen, Virginia 23060.

47.     Plaintiffs received the Customs Seizure Notice from the CBP.

48.     Plaintiffs had previously provided CBP with indicators of counterfeit Top cigarette rolling papers, and CBP was therefore able to determine that the imported cigarette rolling papers were counterfeit.

49.     Further, Plaintiffs have examined a sample of the cigarette rolling papers seized by the CBP.  Samples of the counterfeit TOP-brand cigarette rolling papers were sent to Republic Technologies (France) SAS ("Republic Technologies"), the manufacturer of the legitimate product, for testing.

50.     Republic Technologies confirmed that all of the seized booklets sent to it for testing were counterfeit.

51.     Republic Technologies determined that, among other things, (1) the glue used on the counterfeit paper is different from the glue used on authentic TOP-brand papers, (2) there is a discrepancy between the color of the blue leaves of the counterfeit paper and the color of authentic TOP-brand papers, and (3) the cover of the counterfeit is different from the cover for the authentic TOP-brand papers.

52.    Photographs showing the discrepancies between the tested, counterfeit cigarette rolling papers and genuine TOP-brand cigarette rolling papers are included below.

| **Genuine Booklet** | **Suspicious Booklet** |
|---|---|














**Defendants' Unlawful Activities**

53.     Shortly after the seizure, an investigator hired by the Plaintiffs learned that the P.O. Box at a UPS Store to which the counterfeit goods were to be shipped was rented by Patel.

54.     Plaintiffs' representatives requested a meeting with Patel.

55.     On October 26, 2017, Plaintiffs' representatives and the investigator met with Patel and his business partner, Naresh Patel, at a restaurant in North Chesterfield, Virginia.

56.     During the meeting, Patel provided the names of several importers he believed to be selling cigarette rolling papers purporting to be authentic TOP-brand cigarette rolling papers bearing the TOP Marks but which are, in fact, counterfeit and/or infringe TOP-branded and TOP-labeled products.

57.     After Patel provided the names of alleged importers of counterfeit papers to Plaintiffs, the representatives of Plaintiffs provided Patel with a copy of the Customs Seizure Notice.

58.     Patel admitted that he had received a copy of the same Customs Seizure Notice.

59.     Patel explained that he was the owner of Unit 187 at the UPS Store #4820 and that "Shanil Mitha" is a fictitious name that he created.

60.     Patel admitted that he ordered the counterfeit cigarette rolling papers purporting to be TOP-brand online and he knew they were counterfeit because of the materially lower price than legitimate TOP-brand cigarette rolling papers.

61.     Patel explained that he had ordered and imported the counterfeit TOP-brand cigarette rolling papers with the intent to sell them to his customers at S&N, in particular when his customers confronted him with the lower-priced, counterfeit Top cigarette rolling papers already being sold illegally in the marketplace.

62.     Patel's prior reporting to representatives of Plaintiffs on the problem of counterfeit Top cigarette rolling papers in the region is evidence that Patel is aware of the indicators of counterfeit TOP-brand cigarette rolling papers, including the materially lower price.

63.     Defendants have sold legitimate TOP-brand products in the past and know that the so-called "TOP" rolling paper inventory sold through questionable online sources for substantially less than the price sold by Plaintiffs is counterfeit because it was obviously packaged and identified differently.

64.     Further, Defendants had a longtime customer relationship with Republic and had purchased authentic items from Republic in the past, and knew those authentic items were made in France and not in Asia.  Accordingly, the Defendants knew that the TOP-brand cigarette rolling papers ordered from an exporter in Hong Kong were counterfeit.

65.     Patel directly organized and effectuated such infringing activities by willfully and knowingly importing the cigarette rolling papers purporting to be TOP-brand in order to advertise, offer for sale, sell and/or distribute the counterfeit papers at his store.

66.     Defendants knowingly engaged in and controlled the importation of the counterfeit TOP-brand cigarette papers, and had a direct financial interest in, and stood to gain a direct financial benefit from, their deliberately infringing activities.

67.     By their conduct, Defendants have been knowingly and willfully violating the TOP Marks and Top's trademark rights and unfairly competing with Republic.  Defendants' deliberate conduct has significantly impacted Top's rights because Defendants are trafficking in large quantities of counterfeit merchandise and are thereby violating Top's rights under federal and Illinois law, and Republic's rights under Illinois law.

68.     The imported counterfeit papers are inferior to Plaintiffs' authentic, legitimate TOP-brand cigarette rolling papers.  Among other things, the counterfeit papers use different paper and binding, are different in size and color, and use unknown and unapproved components, such as glues and additives, which may be potentially harmful to consumers.  Actual and prospective purchasers and customers of S&N are likely to mistake the counterfeit papers with authentic TOP-brand cigarette rolling papers.

69.     Because the counterfeit papers are inferior, they weaken, blur and tarnish the TOP Marks and injure Plaintiffs' business reputation by causing their trademarks and the goodwill associated with them to be confused or mistakenly associated with a product of lesser quality, as alleged above.

## FIRST CLAIM FOR RELIEF

### (15 U.S.C. § 1114(1)(a) – Trafficking in Goods Bearing Counterfeit TOP Marks)

70.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 69 of this Complaint as if fully set forth herein.

71.     This claim arises under the provisions of the Lanham Act of 1946, as amended, 15 U.S.C. § 1114(1)(a), and is for the infringement and counterfeiting of trademarks registered in the United States Patent and Trademark Office by Plaintiffs.

72.     Top owns and has rights to use its federally registered TOP Marks in connection with, among other things, cigarette rolling papers, tobacco, smokers' articles and related goods.

73.     Defendants use the mark "TOP" in connection with counterfeit rolling paper, tobacco and other tobacco products, which are goods that are the same as, or are related to, the goods on which Top uses its TOP Marks.

74.     "TOP" is identical to the TOP Marks in sight, sound and commercial impression.

75.     Plaintiffs have not authorized Defendants' use of any of the TOP Marks to advertise, offer for sale, sell and/or distribute Defendants' counterfeit merchandise.

76.     Top's rights in its TOP Marks predate Defendants' first use of the TOP Marks.

77.     Defendants' counterfeit use of the "TOP" mark on or in connection with the importation of goods constitutes use in commerce.

78.     Defendants' willful, knowing and intentional importation and intention to offer for sale counterfeit merchandise is in violation of 15 U.S.C. § 1114(1)(a) and is likely to create confusion, cause mistake, or deceive; cause the public to believe that Defendants' products are authorized, sponsored or approved by Plaintiffs when they are not; and result in Defendants

15

unfairly and illegally benefitting from Plaintiffs' goodwill, causing damage to Plaintiffs' goodwill and the public which counts on Plaintiffs' products having a certain level of quality.

79.     Accordingly, Defendants have engaged in trademark counterfeiting in violation of 15 U.S.C. §1114(1)(a), and are liable to Plaintiffs for all damages related thereto, including, without limitation, actual damages, infringing profits and/or statutory damages, as well as attorneys' fees.

80.     Plaintiffs have been, are now and will be irreparably harmed by Defendants' aforementioned wrongful acts, unless enjoined by this Court.  There is no adequate remedy at law for the harm caused by the wrongful acts alleged herein.

81.     Defendants' egregious conduct in knowingly importing counterfeit merchandise bearing the unauthorized TOP Marks is willful and intentional, and thus constitutes an exceptional case.

82.     In light of the high probability of success for Plaintiffs in a trial on the merits, the likelihood of irreparable damage that will be caused by the sale of counterfeit merchandise, the hardships that have been and are continuing to be dealt to Plaintiffs on a daily basis to both their finances and their reputation, plus the harm that will come to unsuspecting consumers of counterfeit merchandise, injunctive relief is warranted in order to prevent Defendants from continuing to violate the Trademark Act.

83.     Wherefore, Plaintiffs pray for the relief requested below.

## SECOND CLAIM FOR RELIEF

### (15 U.S.C. § 1114 – Infringement of Federally Registered Trademarks)

84.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 83 of this Complaint as if fully set forth herein.

85.     Top owns and has rights to use its federally registered TOP Marks in connection with, among other things, cigarette rolling papers, tobacco, smokers' articles and related goods.

86.     Top's rights in its TOP Marks predate Defendants' first use of the TOP Marks.

87.     Defendants' use of the TOP Marks in connection with importation of cigarette rolling papers is likely to cause confusion, or cause mistake or deceive, in violation of Section 32 of the Lanham Act, as amended, 15 U.S.C. § 1114.

88.     As a direct and proximate result of Defendants' unauthorized use of the TOP Marks, Plaintiffs have suffered and will continue to suffer substantial injury and irreparable damage to their business, reputation and goodwill.

89.     By using the TOP Marks without Top's approval or consent, and with knowledge of Top's rights in their TOP Marks, Defendants have willfully infringed upon the rights of Top with an intent to trade upon the fame and goodwill associated with Top's TOP Marks.

90.     Plaintiffs have been, are now and will be irreparably harmed by Defendants' aforementioned wrongful acts, unless enjoined by this Court.  There is no adequate remedy at law for the harm caused by the wrongful acts alleged herein.

91.     Wherefore, Plaintiffs pray for the relief requested below.

### THIRD CLAIM FOR RELIEF

### (15 U.S.C. § 1125(a) – False Designation of Origin)

92.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 91 of this Complaint as if fully set forth herein.

93.     This claim arises under Section 43(a) of the Lanham Act, as amended, 15 U.S.C. § 1125(a), and alleges Defendants' use in commerce of false designations of origin, and false descriptions and representations.

94.     Through longstanding use, Top owns and has rights to use numerous TOP Marks in connection with, among other things, cigarette rolling papers, tobacco, smokers' articles and related goods.

95.     Top's rights in its TOP Marks predate Defendants' first use of the TOP Marks.

96.     The trademarks of Top, and specifically the TOP Marks, are in full force and effect, and Republic is the exclusive distributor of products with these marks.

97.     The TOP Marks are nationally recognized, including within the Northern District of Illinois, as being affixed to goods and merchandise of the highest quality and coming from a single source, Republic.

98.     Defendants' use of the TOP Marks in connection with the importation of cigarette rolling papers, tobacco and smokers' articles is likely to cause confusion, cause mistake or deceive as to the affiliation, connection or association of Defendants with Plaintiffs, or as to the origin, sponsorship or approval of Defendants' goods or commercial activities by another person, in violation of Section 43(a) of the Lanham Act, as amended, 15 U.S.C. § 1125(a).

99.     As a direct and proximate result of Defendants' unauthorized use of the TOP Marks, Top has suffered and will continue to suffer substantial injury and irreparable damage to its business, reputation and goodwill.

100.    By using the TOP Marks without Top's approval or consent, and with knowledge of Top's rights in its TOP Marks, Defendants have willfully infringed upon Top's rights with an intent to trade upon the goodwill associated with the TOP Marks.

101.    The intentional nature of Defendants' aforementioned wrongful acts also makes this an exceptional case pursuant to 15 U.S.C. § 1117.

102.    Plaintiffs have been, are now and will be irreparably harmed by Defendants' aforementioned wrongful acts, unless enjoined by this Court.  There is no adequate remedy at law for the harm caused by the wrongful acts alleged herein.

103.    Wherefore, Plaintiffs pray for the relief requested below.

### FOURTH CLAIM FOR RELIEF

**(15 U.S.C. § 1124 – Importation of Goods Bearing Infringing Marks or Names Forbidden)**

104.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 103 of this Complaint as if fully set forth herein.

105.    This claim arises under Section 42 of the Lanham Act, as amended, 15 U.S.C. § 1124, and alleges Defendants' importing of goods bearing infringing marks or names forbidden.

106.    Defendants knowingly imported counterfeit papers which imitate the TOP Marks.

107.    The counterfeit papers bear copies of TOP Marks.

108.    By using the TOP Marks without Top's approval or consent, and with knowledge of Top's rights in its TOP Marks, Defendants have willfully infringed upon the rights of Top, with an intent to trade upon the fame and goodwill associated with the TOP Marks.

109.    By importing the counterfeit papers, Defendants have willfully used counterfeit trademarks which cause confusion as to the origin, sponsorship and/or approval of the counterfeit papers, and which are calculated to induce the public to believe that the counterfeit papers were authentically manufactured by Top.

110.    The intentional nature of Defendants' aforementioned wrongful acts through importing a large volume of counterfeit TOP-brand cigarette rolling papers also makes this an exceptional case pursuant to 15 U.S.C. § 1117.

111.    Plaintiffs have been, are now and will be irreparably harmed by Defendants' aforementioned wrongful acts, unless enjoined by this Court.  There is no adequate remedy at law for the harm caused by the wrongful acts alleged herein.

112.    Wherefore, Plaintiffs pray for the relief requested below.

## FIFTH CLAIM FOR RELIEF

**(815 ILCS 510/1 *et seq*. – Violation of Illinois Uniform Deceptive Trade Practices Act)**

113.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 112 of this Complaint as if fully set forth herein.

114.    Defendants have used and are using the TOP Marks in connection with the sale, offering for sale, distribution, promotion or advertising of its goods in commerce in such a manner as to cause a likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of its goods or services.

115.    As a direct and proximate result of Defendants' unauthorized use of the TOP Marks, Plaintiffs have suffered and will continue to suffer substantial injury and irreparable damage to their business, reputation and goodwill.

116.    By using the TOP Marks without Plaintiffs' approval or consent, and with knowledge of Plaintiffs' rights in their TOP Marks, Defendants have willfully infringed upon the rights of Plaintiffs, with an intent to trade upon the fame and goodwill associated with Plaintiffs' TOP Marks.

117.    Defendants' acts complained of herein thus violate the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq*.

118.    Plaintiffs have been, are now and will be irreparably harmed by Defendants' aforementioned wrongful acts, unless enjoined by this Court.  There is no adequate remedy at law for the harm caused by the wrongful acts alleged herein.

119.    Wherefore, Plaintiffs pray for the relief requested below.

## SIXTH CLAIM FOR RELIEF

### (815 ILCS 505/1 *et seq*. – Violation of Illinois Consumer Fraud and Deceptive Business Practices Act)

120.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 119 of this Complaint as if fully set forth herein.

121.    Defendants' acts complained of herein violate the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.*

122.    Plaintiffs have been, are now and will be irreparably harmed by Defendants' aforementioned wrongful acts, unless enjoined by this Court.  There is no adequate remedy at law for the harm caused by the wrongful acts alleged herein.

123.    Wherefore, Plaintiffs pray for the relief requested below.

## SEVENTH CLAIM FOR RELIEF

### (Common Law Trademark Infringement)

124.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 123 of this Complaint as if fully set forth herein.

125.    Top owns all rights, title and interest in and to the TOP Marks, including all common law rights in such marks.

126.    Defendants, without authorization from Plaintiffs, have used and are continuing to use spurious designations that are identical to, substantially indistinguishable from or confusingly similar to the TOP Marks.

127. The foregoing acts of Defendants are intended to cause, have caused and are likely to continue to cause confusion and mistake among consumers, the public and the tobacco trade as to whether Defendants' counterfeit products originate from, or are affiliated with, sponsored by or endorsed by Plaintiffs.

128. On information and belief, Defendants have acted with knowledge of Top's ownership of the TOP Marks and with the deliberate intention or willful blindness to unfairly benefit from the incalculable goodwill symbolized thereby.

129. Defendants' acts constitute trademark infringement in violation of the common law of the state of Illinois.

130. On information and belief, Defendants have made and will continue to make substantial profits and/or gains to which they are not in law or equity entitled.

131. On information and belief, Defendants intend to continue their infringing acts unless restrained by this Court.

132. Defendants' acts have damaged and will continue to damage Plaintiffs, and they have no adequate remedy at law.

133. Wherefore, Plaintiffs pray for the relief requested below.

## EIGHTH CLAIM FOR RELIEF

### (Common Law Unfair Competition)

134. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 133 of this Complaint as if fully set forth herein.

135. The foregoing acts of Defendants constitute unfair competition in violation of the common law of the state of Illinois.

136.    The resemblance between the counterfeit and genuine Top cigarette rolling papers is so close that it is likely to confuse any prospective buyers or customers exercising ordinary caution in their dealings.

137.    Upon information and belief, Defendants will continue to make substantial profits and/or gains to which they are not entitled in law or equity.

138.    On information and belief, Defendants intend to continue their unlawful acts unless restrained by this Court.

139.    Defendants' acts have damaged and will continue to damage Plaintiffs, and they have no adequate remedy at law.

140.    Wherefore, Plaintiffs pray for the relief requested below.

## NINTH CLAIM FOR RELIEF

### (Common Law Fraud)

141.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 140 of this Complaint as if fully set forth herein.

142.    The foregoing acts of Defendants constitute fraud in violation of the common law of the state of Illinois.

143.    Defendants made a false statement of material fact by signing the VRIP and agreeing to "Maintain exclusive Republic Tobacco Cigarette Paper distribution throughout the program period (12/1/16 through 11/30/2017)."

144.    During the program period, Defendants made at least one purchase of counterfeit TOP-brand cigarette rolling papers to resell at S&N.

145.    Defendants knew the statement and agreement to maintain an exclusive distribution of Republic Tobacco Cigarette Paper throughout the program period was false.

146.    Defendants intentionally misrepresented their agreement to induce Plaintiffs to act in accordance with the VRIP.

147.    The Plaintiffs relied on the false statement to their detriment by providing rebates and incentive trips to Patel.

148.    Defendants' acts have damaged and will continue to damage Plaintiffs, and they have no adequate remedy at law.

149.    Wherefore, Plaintiffs pray for the relief requested below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief:

1.    That judgment be entered as follows:

a.    Defendants violated the anti-counterfeiting provisions of 15 U.S.C. § 1114(1);

b.    Defendants infringed Plaintiffs' federally registered trademarks pursuant to 15 U.S.C. § 1114;

c.    Defendants' unlawful use of the TOP Marks in interstate commerce constitutes false designation of origin, pursuant to 15 U.S.C. § 1125(a);

d.    Defendants unlawfully imported goods bearing marks infringing to the TOP Marks, pursuant to 15 U.S.C. § 1124;

e.    Defendants have infringed Plaintiffs' common law trademark rights;

f.    Defendants have in the past, and are currently, unfairly competing with Plaintiffs; and

g.    Defendants have committed fraud through their misrepresentations to Plaintiffs;

2.    An order requiring that Defendants, their subsidiaries, officers, agents, servants, employees, owners and representatives, and all other persons or entities in active concert or participation with them, be permanently enjoined and restrained from:

    a.      making any unauthorized use of the TOP Marks, or any reproduction, counterfeit, copy or colorable imitation thereof or of any other of Top's marks, in connection with the sale of any goods or offering of any services;

    b.      manufacturing, distributing, advertising, marketing, promoting, offering for sale or selling any goods, wares or services, including, but not limited to, all rolling papers, or any other goods with marks or trade dress that look confusingly similar to any of the TOP Marks, as well as any other forms of markings, packaging, labels, wrappers, containers, articles, products, displays, signs, circulars, kits, literature, materials, receptacles, catalogs, price lists, promotional materials or websites and the like bearing a reproduction, counterfeit, copy or colorable imitation of the TOP Marks;

    c.      using any mark, trade dress, design, statement or representation that may be calculated to falsely represent or that has the effect of falsely representing that the services or products of Defendants are in any way sponsored by, originate with or are associated or approved by Plaintiffs;

    d.      falsely representing themselves or their goods or services as affiliated with, connected with, associated with or approved by Plaintiffs;

    e.      advertising, marketing, promoting, offering for sale, selling, importing, exporting, distributing and/or transferring rolling papers and related products complained of herein and/or anything confusingly similar thereto, or any reproduction, counterfeit, copy or colorable imitation thereof, and/or any other of the TOP Marks, through any means whatsoever, including, but not limited to, retail, wholesale, via the Internet, mail order, telephone or any other method of interstate or intrastate commerce;

    f.      doing any other act or thing calculated or likely to cause confusion or mistake in the minds of members of the public, including prospective customers of Plaintiffs, as to the source of the goods offered, distributed, marketed, advertised or sold by Defendants, or as to whether there is a connection between Plaintiffs and Defendants; and

    g.      assisting, aiding or abetting any other person or entity in engaging in any of the acts set forth in (a) through (f) above;

    3.     An order that all products, labels, packaging, wrappers, signs, prints, banners, posters, brochures, catalogs or other advertising, promotional or marketing materials in Defendants' possession, custody or control, or in the possession, custody or control of any of their agents, that feature any of the TOP Marks and/or any other goods

that may infringe TOP Marks be removed and destroyed, along with the means for making the same;

4.   An order that Defendants file with this Court and serve upon Plaintiffs within 30 days after entry of the injunction a report in writing, under oath, setting forth in detail the manner and form in which Defendants have complied with the injunction entered by this Court;

5.   Damages in an amount to be proven at trial sufficient to compensate Plaintiffs for all damages caused by Defendants' conduct, with such damages to be trebled if appropriate within the Court's discretion;

6.   An order awarding Plaintiffs statutory damages pursuant to 15 U.S.C. § 1117(c) based on the maximum amount available of two million dollars ($2,000,000) per counterfeit mark;

7.   Disgorgement of all profits or other unjust enrichment obtained by Defendants as a result of Defendants' conduct complained of herein, with the amount of such profits increased to the extent they are inadequate to compensate Plaintiffs for the harm incurred as a result of Defendants' acts;

8.   An accounting of all financial records of Defendants Harsh Paresh Patel and S&N Enterprises;

9.   All allowable costs associated with this action;

10.   Plaintiffs' attorneys' fees under 15 U.S.C. § 1117;

11.   Pre- and post-judgment interest; and

12.   Any and all additional relief this Court deems just under the circumstances.

Dated:  April 18, 2018

**TOP TOBACCO, L.P. and REPUBLIC TOBACCO, L.P.**

By:  /s/ Sheldon T. Zenner

Sheldon T. Zenner
Alexandra M. McNicholas
KATTEN MUCHIN ROSENMAN LLP
525 W. Monroe St.
Chicago, Illinois 60661
(312) 902-5200

*Attorneys for Plaintiffs*
*Top Tobacco, L.P. and*
*Republic Tobacco, L.P.*

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury.

Dated:  April 18, 2018

By:  /s/ Sheldon T. Zenner

Sheldon T. Zenner
Alexandra M. McNicholas
Katten Muchin Rosenman LLP
525 W. Monroe St.
Chicago, Illinois 60661
(312) 902-5200

*Attorneys for Plaintiffs*
*Top Tobacco, L.P. and*
*Republic Tobacco, L.P.*

132857605

28